**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**ANTHONY TERRELL JONES, #K3994**                                   **PETITIONER**

**versus**                                                   **CIVIL ACTION NO. 5:06cv145-DCB-MTP**

**LAWRENCE KELLY, Superintendent**                                   **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* petition of Petitioner Anthony Terrell Jones for a

writ of habeas corpus under 28 U.S.C. § 2254. Having considered the submissions of the parties,

the record of the state court proceedings, and the applicable law, the undersigned is of the

opinion that the Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied.

### PROCEDURAL HISTORY

On June 9, 2004, Petitioner Anthony Terrell Jones was convicted in the Circuit Court of

Warren County, Mississippi of aggravated assault, kidnaping, and possession of a firearm by a

convicted felon, and was sentenced to a term of twenty years for count one, thirty years for count

two, and three years for count three, to be served consecutively. (R.1 at 46-48, 50.)

Jones filed a direct appeal of his convictions and sentences in the Mississippi Supreme

Court, raising the following grounds: (1) "The trial court erred in not granting Appellant's

Motion for Judgment Notwithstanding the Verdict, or in the alternative not granting a New

Trial"; (2) "The trial court erred in granting States [*sic*] motion in limine to permit Mr. Jones'

prejudicial prior bad acts to be mentioned in State's opening statement as well as testimony from

State's witnesses in violation of Miss. R. Evid. R. 404"; (3) "The trial court erred in granting

States [*sic*] motion in limine to permit Mr. Jones' prejudicial prior bad acts to be mentioned in

State's opening statement as well as testimony from State's witnesses without first conducting an

on the record M.R.E. 403 balancing test"; (4) "The trial court erred in admitting photographs of the victim's injuries"; and (5) "The trial court erred in not giving the jury a circumstantial evidence instruction." *See* Appellant's Brief, Ex. D to Petition [1].  Additionally, Jones raised the following grounds *pro se*: (1) "Whether trial defense attorney was ineffective for not presenting evidence of victim's uncharged misconduct for forging defendant's signature and presenting false information to Mississippi Department of Human Services to receive monies for child services"; and (2) "Whether the trial defense counsel was ineffective for failure to call witnesses on behalf of the defendant that would have impeached [Ms.] Thomas as a witness and supported his claims concerning the DHS claim." *Id.*  On February 2, 2006, the Mississippi Supreme Court affirmed Jones's conviction and sentence.[1]  He did not seek further discretionary review in state court by filing a petition for rehearing, nor did he file a petition for writ of certiorari to the United States Supreme Court.

On or about May 2, 2006,[2] Jones filed a motion for leave to seek post-conviction collateral relief in the state courts, in which he raised the same seven grounds raised in his direct appeal, plus the following additional seven ineffective assistance of counsel claims: (1) trial counsel failed to "explore" the relationship between the state's witness Johnny Thomas and Jones's aunt; (2) trial counsel failed to conduct an adequate pre-trial investigation to obtain information to contradict victim's testimony; (3) trial counsel failed to adequately explain why Jones was present at the victim's mother's house on the day in question; (4) trial counsel did not subpoena witnesses on petitioner's behalf; (5) trial counsel displayed a conflict of interest during closing arguments; (6) trial counsel failed to reveal that the victim had a history of lying to law

---

[1] *Jones  v. State of Mississippi,* 920 So. 2d 465 (Miss. 2006).

[2] He had three years from the date his "direct appeal [was] ruled upon" to do so.  Miss. Code. Ann. § 99-39-5(2).

enforcement; and (7) trial counsel "was ineffective due to the fact that he on May 19, 2004 had a hearing on Jones's motion for a psychiatric evaluation" and that prior to the hearing, Jones had informed trial counsel that he no longer desired his representation.[3]  On July 26, 2006, the Mississippi Supreme Court denied Jones's ineffective assistance of counsel claims, stating that they were "without merit pursuant to *Strickland v. Washington*."  *See* State Court Record, No. 2006-M-00761, Miscellaneous Pleadings. The court dismissed the remaining claims raised by Jones, holding that they were procedurally barred pursuant to Miss. Code Ann. § 99-39-21, since they were either "raised on direct appeal or were capable of being raised on direct appeal."  *Id.*

On or about October 10, 2006, Jones filed a pleading titled "Writ of Certiorari" with the Mississippi Supreme Court, asking the court to vacate and remand the judgment of the trial court, and to instruct the trial court to release him from prison or to issue him a proper indictment.[4]  On January 29, 2007, the Mississippi Supreme Court issued an order stating as follows:

> The panel finds that the filing is in the nature of a petition for post-conviction relief and is considered as such.  After due consideration, the panel finds that the relief requested in the petition should be denied.  IT IS THEREFORE ORDERED that the relief requested in the "Writ of Certiorari" filed by Anthony Jones is denied.

*See* Ex. A to Answer [13-2].

Jones filed his *pro se* petition for writ of habeas corpus on or about October 19, 2006.  By that petition, he asserts the following grounds for habeas relief: 1) ineffective assistance of

---

[3] Although grounds six and seven were not specifically numbered as "issues" in Jones's petition, the issues were contained in the petition and are thus sufficiently presented.  *See* Petition [1] at 42; 45-46; *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) (holding that *pro se* habeas petitions are liberally construed).

[4] State Court Record, No. 2006-M-00761, Miscellaneous Pleadings.

counsel (the same nine claims raised in his state petition as listed above);[5] 2) violation of his due process rights for the trial court's failure to give a circumstantial jury instruction; and 3) violation of his equal protection rights under the Fourteenth Amendment for the trial court's admission of inflammatory evidence that prejudiced him. These grounds were considered and rejected by the Mississippi Supreme Court.[6]

DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), to which this case is subject,[7] specifies that exhaustion of a claim in state court is required for a federal court to consider the claim: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State... ." 28 U.S.C. § 2254(b)(1)(A).

To satisfy this requirement, the petitioner must present his claims to the highest state court in a procedurally proper manner so that the state courts are given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). This is so because state courts, "like federal courts, are obliged to enforce federal law." *O'Sullivan,* 526 U.S. at 844.

---

[5]Ground one of Jones's petition, ineffective assistance of counsel, states as follows under the supporting facts: "see pages attached page 53-66." *See* Petition [1] at ¶ 12. A. Jones attached pages 53-66 of his state habeas petition, containing the ineffective assistance of counsel grounds previously raised.

[6]On March 19, 2007, Jones filed a motion to stay [15], requesting a stay from this court based on "newly discovered evidence" that is relevant to his case, so that he can "first exhaust all state remedies." *See* Motion to Stay [15]. The court denied the motion, holding that Jones had exhausted all of his claims. The court further held that it will consider the alleged new evidence, the Millon Clinical Multiaxial Inventory-III Corrections Report, in evaluating the merits of Jones's petition. *See* Order [25].

[7]*See Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. *See Orman v. Cain,* 228 F.3d 616, 620 & n.6 (5th Cir. 2000).

Jones has satisfied the exhaustion requirement for the grounds raised in his federal petition by first giving state courts the opportunity to resolve any constitutional issues. These claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Under the AEDPA, when the state court has adjudicated the petitioner's claims on the merits,[8] the federal court reviews mixed questions of law and fact under subsection (d)(1). *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). Since the grounds raised in Jones's federal petition involve mixed questions of law and fact, this court's authority to grant habeas relief on these claims is limited to a determination of whether the decisions of the Mississippi Supreme Court "[were] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Whether the applicable law is clearly established for purposes of a Section 2254(d)(1) analysis is determined solely by reference to Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). A decision by any other court "even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." *Salazar v. Dretke,* 419 F.3d 384, 399 (5th Cir. 2005).

The "unreasonable application" inquiry is based on an objective standard, and for purposes of a Section 2254(d)(1) analysis, "unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir. 2004). The application of clearly-established precedent must be both incorrect and unreasonable for federal habeas relief to be warranted. *Id.*

---

[8]"On the merits" refers to substantive, rather than procedural, disposition of the case. *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002).

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable,"[9] but it is to review only the state court's ultimate conclusion and not the reasoning that was used to reach it. *Neal*, 286 F.3d at 246.

It is by these principles and against the backdrop of exhaustion requirements and substantive determinations that Jones's claims must be viewed–with the added observation that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir. 1986). As discussed below, Jones cannot clear the bar to federal habeas review by bringing his exhausted claims within the narrow exception set forth in 28 U.S.C. § 2254(d)(1).

**GROUND ONE**

In Ground One, Jones alleges ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, he raises the following nine claims of ineffective assistance:

A.     "Whether trial defense attorney was ineffective for not presenting evidence of victim's uncharged misconduct for forging defendant's signature and presenting false information to Mississippi Department of Human Services to receive monies for child services"

B.     "Whether the trial defense counsel was ineffective for failure to call witnesses on behalf of the defendant that would have impeached Ms. Thomas as a witness and supported his claims concerning the DHS claim"

C.     Trial counsel "was ineffective due to the fact that he on May 19, 2004 had a

_____

[9]*Neal,* 286 F.3d at 244 (citing *Williams v. Taylor,* 529 U.S. 362, 409 (2000)).

hearing on Jones's motion for a psychiatric evaluation" and that prior to the

hearing, he had informed trial counsel that he no longer desired his representation

D.      Trial counsel failed to "explore" the relationship between the state's witness Mr.

        Thomas and Jones's aunt

E.      Trial counsel failed to conduct an adequate pre-trial investigation to obtain

        information to contradict victim's testimony

F.      Trial counsel failed to adequately explain why Jones was present at the victim's

        mother's house on the day in question

G.      Trial counsel did not subpoena witnesses on Jones's behalf;

H.      Trial counsel displayed a conflict of interest during closing arguments; and

I.      Trial counsel failed to reveal that the victim had a history of lying to law

        enforcement officials.[10]

Jones raised Grounds One (A) and (B) on direct appeal, and the Mississippi Supreme

Court rejected them on their merits.[11]  The court held that Jones's claim failed to meet the high

standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Jones*, 920 So. 2d at 478-79.  Jones

also raised Grounds One (A) and (B), in addition to Grounds One (C) through (I) in his

application for state post-conviction relief, and the Mississippi Supreme Court held that the

claims were without merit pursuant to *Strickland v. Washington*.[12]


Given that an ineffective assistance of counsel claim presented for habeas review

---

[10]Jones's ineffective assistance of counsel claims were not labeled as set forth above, but
the court has labeled the issues for ease of reference.

[11]*Jones v. State*, 920 So. 2d 465 (Miss. 2006).

[12]*See* State Court Record, No. 2006-M-00761, Miscellaneous Pleadings.

presents

a mixed question of law and fact,[13] and that *Strickland v. Washington* is the "clearly established

Federal law" which governs such claims, the Section 2254(d)(1) issue in this case is "whether

the Mississippi Supreme Court's decision to reject [Jones's] ineffective assistance claim

'involved an unreasonable application' (and not merely an incorrect application) of *Strickland.*"

*Neal,* 286 F.3d at 236.

It was in *Strickland* that the United States Supreme Court defined the standard by which

an ineffective assistance of counsel claim in a habeas proceeding is to be measured: Jones must

show that his "counsel's performance was deficient" and that "the deficient performance

prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Motley v. Collins,* 18 F.3d 1223,

1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's

acts "fell below an objective standard of reasonableness").  "To meet the prejudice prong of the

*Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice."

*Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750

F.2d 353, 356 (5th Cir. 1984)).  Further, Jones must not only prove that the outcome of his trial

would have been different "but for counsel's alleged errors," but must also prove that "'the result

of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685

(5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

In Ground One (A), Jones claims his "defense attorney was ineffective for not presenting

evidence of victim's uncharged misconduct for forging defendant's signature and presenting

false information to Mississippi Department of Human Services [("MDHS")] to receive monies

for child services."  In rejecting this claim on direct appeal, the Mississippi Supreme Court held,

---

[13]*Nixon v. Epps,* 405 F.3d 318, 324 (5th Cir. 2005).

Jones's claim that he should be afforded a new trial based on his lawyer's failure to submit this questionable evidence of Thomas's dealings with MDHS, clearly fails to hurdle the high standards by which we review ineffective assistance of counsel claims. Moreover, *Strickland* clearly obviates Jones's evidentiary claim to the extent that the evidence, which he proposes should have been submitted, was, at the very least, irrelevant. To this end, Jones can not even meet the first prong set forth by *Strickland* and demonstrate to this Court that his trial lawyer even committed error. All of this having been said, it follows that, even assuming arguendo that the performance of Jones's trial counsel was deficient, Jones's claim unquestionably falls well short of meeting *Strickland's* important second prong which requires Jones to demonstrate that but for his lawyer's error he would have prevailed at trial. As such, this pro se issue is wholly without merit.

*Jones*, 920 So. 2d at 478–79.

Even assuming Jones's trial counsel was deficient for failing to present evidence of Taquelia Thomas's (the victim) uncharged conduct regarding the MDHS, as it could have potentially been used to question the veracity of the victim's testimony, Jones has failed to demonstrate that the outcome would have been different but for counsel's deficiency. Both the testimony of other witnesses– including Eddie Butler, Johnny Thomas and Keisha Smith– and the physical evidence–including the hairpiece, the shoe, the gun, the photographs, etc.-- corroborated Ms. Thomas's account of the incidents that occurred on September 6-7, 2003.[14]

---

[14]Ms. Thomas testified that on September 6, 2003, her friend Keisha Smith called her and asked her to come to her house. While she was talking to Smith outside her house, Jones, Ms. Thomas's ex-boyfriend, ran towards her, jumped in her van, and put her in a head-lock. He told her to drive, but her friend Smith took the keys out of the ignition. After yelling and cursing at Ms. Thomas, Jones finally left. (R.3 at 174-78.)

Ms. Thomas testified that on September 7, 2003, when she was leaving her mother's house on Washington Street, Jones came up behind her and put a gun to her head and forced her into her red van and made her give him the keys. When he was backing out of the driveway, she jumped out and ran. The next thing she remembers is waking up on the ground and being taken to the hospital. (R.3 at 179-88.)

Eddie Butler testified that he was driving down Washington Street on September 7, 2003, and observed a woman (later identified as Ms. Thomas) jump out of a red van backing out of a driveway. The van chased the woman down the street, and "swung back like a perfect hit, to catch the young lady with the hood of his truck or van." He testified that the van went into a

(R.3 at 174-314).

In Ground One (B), Jones claims his trial defense counsel was ineffective for failing to call witnesses on his behalf that would have impeached Ms. Thomas as a witness and supported his claims concerning the DHS fraud. Specifically, Jones claims his trial counsel should have called Tom Wilson and Jeff Merit, detectives with the Vicksburg Police Department, to present testimony regarding an incident that occurred a month prior to the September 7, 2003 incident, establishing that Ms. Thomas lied to them during questioning. Jones also claims his counsel should have called Dorothy Breland of Breland Bonding Agency regarding alleged false information Ms. Thomas provided to her in order to obtain bond on a shoplifting charge. Further, Jones claims his counsel should have called witnesses to confirm his allegations regarding Ms. Thomas's DHS fraud. Petition [1] at 31.

As the Respondent points out, the Fifth Circuit has held that "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [citation omitted] Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). Because the testimony of these uncalled witnesses is indeed speculative, and because the other evidence at trial supports the victim's testimony, Jones has failed to prove that the outcome of his trial would have been different had

church parking lot and knocked down some bricks, and knocked the woman to the ground. (R.3 at 246-55).

Johnny Thomas's testimony is summarized under Ground One (D) below.

Keisha Smith's testimony corroborated Ms. Thomas's account of the events that occurred on September 6, 2003. (R.3 at 308-14.)

these witnesses been called.[15]

In Ground One (C), Jones claims his trial counsel "was ineffective due to the fact that he on May 19, 2004 had a hearing on petitioner's motion for a psychiatric evaluation" and that prior to the hearing, he had informed his trial counsel that he no longer desired his representation. Jones claims he requested new counsel, but the trial judge allegedly informed him that "this is not a candy store, and you do not have your picks and chooses (sic) in this matter."[16]

The record reflects that Jones's trial counsel filed a motion for a psychiatric examination in order to determine whether Jones knew right from wrong at the time of the alleged crimes and whether he is able to effectively confer with his counsel at trial. (R.1 at 8.) The court held a hearing on the motion on May 19, 2004. (R.1 at 11); Ex. A to Supplemental Response [27].[17] At the beginning of the hearing, Jones's trial counsel informed the judge that Jones had written him a letter indicating that he no longer desired his representation. Based on this letter, Jones's counsel asked the judge to appoint Jones new counsel. At the hearing, Jones testified that his trial attorney "has been inconsistent and hasn't shown [him] consideration in these matters."[18]

---

[15]Moreover, as discussed in detail below under Ground One (I), Jones's counsel questioned Ms. Thomas about her past criminal charges, including a charge for providing false information to the police.

[16]Petition [1] at 42.

[17]In its Order [25] denying Jones's Motion to Stay [15], the court stated that it would consider the "new evidence" submitted by Jones in support of this ground, an excerpt from a Millon Clinical Multiaxial Inventory-III Corrections Report ("MCMI-III Report") issued on or about July 2, 2004, pursuant to Rule 7 of the Rules Governing Section 2254 Cases. *See* Reply [17-3]. Based on the "new evidence," the court granted the Respondent an opportunity to submit supplemental arguments and materials in opposition, if necessary, on the narrow issue regarding Jones's claim that his trial counsel was ineffective during the hearing on his motion for a psychiatric evaluation. *See* Order [25]. Jones filed a Rebuttal [28] to Respondent's Supplemental Answer [27].

[18]Ex. A to Supplemental Answer [27].

The judge informed Jones that he could hire any attorney he desired, but that he could not pick and choose among the limited number of attorneys available to represent criminal defendants at the state's expense. The trial judge informed Jones that his trial counsel was one of the most qualified trial attorneys in the area, and that he had worked as a district attorney and successfully represented many criminal defendants. The trial judge informed Jones that he was not in a candy store, and that he would have the attorney he was appointed; Jones replied, "yes sir."[19] The trial judge considered the matter resolved, and asked Jones's trial counsel to continue representing him in the matter.[20]

During the hearing on Jones's motion for a psychiatric evaluation, his trial counsel called several witnesses on Jones's behalf, including his mother and his sister. In addition, his trial counsel put Jones on the stand and performed a direct examination regarding his need for a psychiatric exam. The state also put on several witnesses, whom Jones's counsel cross-examined. After hearing all of the testimony and the arguments of counsel, the trial court found that there were no reasonable grounds to believe that Jones was incompetent. The court found that based on the testimony of the witnesses and the court's observation of Jones's actions and testimony, he was competent to stand trial and understood what he was doing. The trial judge stated that he did not believe Jones was insane or that he had any condition that prevented him from knowing right from wrong or participating in the trial.[21]

Based on the record, there is no evidence that Jones's trial counsel's performance during the hearing was deficient. His trial counsel's decision to continue his representation during the

---

[19]*Id.*

[20]*Id.*

[21]*Id.*

hearing despite Jones's request for new counsel was not deficient; to the contrary, given the court's ruling on the matter, it would have been deficient for him to end his representation. Moreover, his trial counsel's decision not to appeal the court's denial of a psychiatric examination was not deficient; based on the record, there was no reasonable basis to challenge the ruling. *See Strickland*, 466 U.S. at 689 (holding that counsel should be given wide latitude in making tactical decisions). Finally, the "new evidence" submitted by Jones, the MCMI-III Report, is dated July 2, 2004, which was after the hearing on the motion for a psychiatric examination and after Jones's trial.[22] *See* Ex. A to Response [17-3]. Therefore, his counsel had no way of using the MCMI-III Report.[23] Accordingly, this court cannot conclude that Jones's trial counsel's performance fell below an objective standard of reasonableness. *See Motley*, 18 F.3d at 1226.

In Ground One (D), Jones claims his trial counsel failed to "explore" the relationship between the state's witness, Johnny Thomas, and Jones's aunt. Jones claims that had his counsel done so, he could have discovered that Mr. Thomas held a personal and interpersonal grudge against him.[24] Mr. Johnny Thomas testified that on September 7, 2003, he was driving down Washington Street, the location where the incident occurred. He noticed a young lady lying on the street covered up in wreckage, and pulled over to assist her. He witnessed Jones standing over her with a gun pointed at her. He testified that he recognized Jones because he was once married to his aunt and knew his father. He testified that he hit Jones on the shoulder and stated,

---

[22]Jones's trial occurred June 7-9, 2004. (R.1 - R.4.)

[23]The MCMI-III Report is apparently a test performed on inmates during intake as part of a research study intended to assist with placement decisions. *See* MCMI-III Report [17-3]. While the report notes a diagnosis of major depression and generalized anxiety disorder, it does not declare Jones insane or incompetent to stand trial. *Id.*

[24]Petition [1] at 43-44.

"Hey, young man. I know you . . . you don't want to do this," and Jones ran off. (R.3 at 259-63.) Jones's trial counsel cross-examined Mr. Thomas about his testimony, and asked him why his statement that he saw Jones with a gun was not included in the statement he gave to the detective on the date of the accident. (R.3 at 266-72.)

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Jones has failed to allege with specificity how the discovery of the alleged "grudge" would have altered the outcome of the trial. The record reflects that Jones's trial counsel thoroughly cross-examined Mr. Thomas. His counsel's alleged failure to investigate Mr. Thomas's alleged personal grudge against Jones clearly did not fall below an objective standard of reasonableness. *Motley*, 18 F.3d at 1226.

In Ground One (E), Jones claims his trial counsel failed to conduct an adequate pre-trial investigation to obtain information to contradict the victim's testimony. Specifically, he alleges that the victim testified that she had a hard time standing on her feet for long periods of time; an adequate investigation would have allegedly revealed that the victim "clearly contradicted herself."[25] Jones's trial counsel's decision not to question the victim about the extent of her injuries was most likely a tactical decision. *See Strickland*, 466 U.S. at 689 (holding that counsel should be given wide latitude in making tactical decisions). Given the extent of the victim's injuries,[26] down-playing her injuries in an attempt to impeach her testimony would not likely sit

---

[25]Petition [1] at 44.

[26]Ms. Thomas testified she was in the hospital for six to seven weeks following the incident on September 7, 2003. She sustained severe injuries to her right leg, where part of a fence pole went through the back of her leg and came out through her knee, shattering her knee cap. She sustained a fractured collarbone, a fractured pinkie finger and a broken wrist; her pelvis

well with the jury. *See Martinez v. Quarterman*, 481 F.3d 249, 257 (5th Cir. 2007) ("To fault counsel for not asking these particular questions is to engage in the kind of hindsight second-guessing that *Strickland* warned against."). Accordingly, Jones has failed to establish that his counsel's alleged failure fell below an objective standard of reasonableness. *Motley,* 18 F.3d at 1226. Moreover, Jones has failed to state with specificity how a more thorough investigation would have altered the outcome of the trial. *See Green*, 882 F.2d at 1003.

In Ground One (F), Jones claims his trial counsel failed to adequately explain why Jones was present at the victim's mother's house on Washington Street on the day in question. Specifically, he claims that his trial counsel was aware that false information was given that Jones lived at the address.[27] Jones's argument is unclear at best. Regardless, Jones testified why he was present at the victim's mother's house on the day in question.[28] Jones has failed to show how this is relevant to his defense and how further questioning regarding the issue would have changed the outcome of the trial.

In Ground One (G), Jones claims his trial counsel did not subpoena witnesses on his behalf. However, Jones failed to specify what witnesses should have been called, or what their proposed testimony would have been. *See supra*, *Lockhart*, 782 F.2d at 1282 ("Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative."). Accordingly, this claim is without merit.

In Ground One (H), Jones claims his trial counsel displayed a conflict of interest during

---

was split in two; her kidneys and bladder were lacerated; her lungs were bruised; her face was cut; and she tore a ligament in her left leg. (R.3 at 188-206.)

[27]Petition [1] at 44.

[28]Jones testified he went to Washington Street on September 7, 2003, where the victim's mother resides, to "discuss the situation concerning the residents of that area." (R.4 at 324-25.)

closing arguments. Specifically, he claims that his trial counsel made the following statements to the jury: "that the defendant was acting a fool or acting real stupid . . . and I'm not going to try to defend his acts . . . that I tried not to be hard on her . . . and I can say that I'm trying to stay on good graces with my client, which is very difficult."[29] The record reflects the following statements made by Jones's trial counsel relevant to this ground:

> The guy was acting real stupid. I'm not going to try to defend his acts. Okay. This was the first time it ever happened. I asked Taquelia [the victim] point blank, I said, "let me describe the relationship for you. You loved him. He loved you. You couldn't live together no way." It was one of those type relationships that everybody understands. They just won't work. All right.

(R.4 at 390.)

> [W]hen he came over there, even though he's still acting a fool –okay. We all know that. They're trying to say that he premeditatedly – all his intent was to do was to force and confine her and all this kind of stuff. I submit to you that it's far more reasonable to say and to conclude that he came there to talk some more. Admittedly, he shouldn't have been there. She probably made it clear the night before, but that's what he's coming there for, and then all these things kind of break loose and totally unravel. And he's still acting a fool, but he is a fool who doesn't have the intent to kidnap, that doesn't have the intent to hurt. That wasn't his intent in going there. All right. So I ask you to look at it in that particular context.

(R.4 at 392-93.)

> Okay. As far as Taquelia Thomas, I've admitted she was injured. I tried not to be hard on her on cross-examination. I would point out to you though that – if you're basing your conviction on just what she says, that she, on May 21st of 2003, pled guilty to providing false information to the police. Now, I'm telling you that, okay? I'm not here to, you know – you know, to try to trash somebody or anything. I'm just telling you that the lady on that particular date and time has been convicted of giving false information out. So if you are considering basing a verdict on her testimony, at least, in whole or in part, consider that fact.

(R.4 at 400.)

> I can say that I'm trying to stay on good graces with my client, which is very difficult. So I would ask the Court – I need to confer with him periodically on

---

[29]Petition [1] at 45.

things.  I'm just going to try to do the best I can to keep his professional presentation.

(R.2 at 4.)

A review of the record does not reveal a conflict of interest; rather, the testimony quoted above establishes that Jones's trial counsel was trying to prove that while his client may have acted foolishly, he did not intend to kidnap or injure the victim. *See Strickland*, 466 U.S. at 689 (holding that counsel should be given wide latitude in making tactical decisions); *Neal,* 286 F.3d at 247.  Jones has failed to show that his trial counsel's statements fell below an objective standard of reasonableness.  Moreover, the last statement quoted above was made outside the presence of the jury.  (R.2 at 4.)  Accordingly, Jones's allegation that the statement revealed a conflict is without merit.

Finally, in Ground One (I), Jones claims his trial counsel failed to reveal that the victim had a history of lying to law enforcement officials, and that she has been charged with several crimes.  In support, Jones attaches what appear to be excerpts of Taquelia Thomas's criminal, which include charges for shoplifting, possession of marijuana, theft of an automobile, and providing false information to the police.[30]  As set forth above, Jones's counsel did reveal the victim's criminal history to the jury in his closing statement.  (R.4 at 400.)  Moreover, Jones's counsel questioned Ms. Thomas about two of her criminal convictions on cross-examination.  (R.3 at 224-25.)  Jones's counsel also questioned Ms. Thomas about her other criminal charges outside the presence of the jury, but did not mention them in the presence of the jury because they did not result in convictions.  (R.3 at 210-11; 219-21.)   Accordingly, this claim is clearly without merit.

Jones has failed to establish that his trial counsel's performance was deficient;

[30]Petition [1] at 66-74.

specifically, he has failed to show that his counsel's acts "fell below an objective standard of reasonableness." *See Motley,* 18 F.3d at 1226. Moreover, Jones has failed to affirmatively prove that he was prejudiced by his counsel's alleged deficiencies. *See Bonvillain*, 780 F.2d at 1253. Finally, Jones has failed to prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *See Vuong,* 62 F.3d at 685 (quoting *Lockhart*, 506 U.S. at 369); *see also Lockhart*, 506 U.S. at 368-70 (emphasizing that the "Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial" and that "the touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding") (internal quotations and citations omitted); *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000).[31] Given the deferential standards that apply, the Mississippi Supreme Court's rejection of Jones's ineffective assistance of counsel claims does not involve an objectively unreasonable application of *Strickland* to the facts of his case. *See Neal,* 286 F.3d at 247 (affirming denial of petition). Therefore, Jones is not entitled to habeas relief on this ground.

### **GROUND TWO**

In Ground Two, Jones alleges a due process violation for the trial court's failure to give a circumstantial jury instruction. Specifically, he claims that his aggravated assault charge was indicted as a "specific intent" charge, and the only evidence offered for the intent element was circumstantial evidence. He claims he offered a circumstantial jury instruction, D-6, and the trial court improperly refused it. Petition [1] at 30.

Jones raised this issue on direct appeal, and the Mississippi Supreme Court rejected it on

---

[31] "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we can find no merit to these claims." *Miller*, 200 F.3d at 282 (internal alterations and citation omitted).

its merits.[32] The court held that it has "distinguished the element of intent from other elements by allowing the State to use circumstantial evidence to prove intent, without the circumstantial evidence instruction." *Jones*, 920 So. 2d at 478 (citing *Hunt v. State*, 687 So. 2d 1154, 1162 (Miss. 1996)). Jones also raised this issue in his application for post-conviction relief, and the Mississippi Supreme Court dismissed the claim as procedurally barred pursuant to Miss. Code. Ann. § 99-39-21.[33]

The United States Supreme Court has made it clear that "instructional errors of state law generally may not form the basis for federal habeas relief." *Gilmore v. Taylor,* 508 U.S. 333, 344 (1993); *see also Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991) (stating that "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"). Rather, challenges to jury instructions may only form the basis for federal habeas corpus relief where the improper instruction rose to the level of a constitutional violation. *Estelle*, 502 U.S. at 72. The inquiry required of a federal court conducting a review for habeas purposes is only whether any error in giving or failing to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147 (1973); *see also Galvan v. Cockrell,* 293 F.3d 760, 764-65 (5th Cir. 2002) (noting that the petitioner's burden of demonstrating "that an erroneous jury instruction violated [his] due process rights is 'greater than the showing required to establish plain error on direct appeal'") (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Further, the Supreme Court has observed as "well established" that challenged jury instructions "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle,*

---

[32]*Jones v. State*, 920 So. 2d 465 (Miss. 2006).

[33]*See* State Court Record, No. 2006-M-00761, Miscellaneous Pleadings.

502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147). "[A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Cupp,* 414 U.S. at 147. Accordingly, "not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.*

Under Mississippi law, "[a] defendant is entitled to a circumstantial evidence instruction, upon request, when the evidence for the prosecution is **wholly circumstantial**." *Parker v. State*, 606 So. 2d 1132, 1140 (Miss. 1992) (citations omitted) (emphasis added). The typical circumstantial evidence instruction is "beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." *Id.*

The court and the parties examined each jury instruction outside the presence of the jury, including D-6.[34] In refusing instruction D-6, the court found that it attempted to define reasonable doubt and that it was improper because it was a two-theory instruction, citing to *Rogers v. State,* 847 So. 2d 858, 863 (Miss. 2003) (holding that because the case was not a

---

[34]Instruction D-6 states:

The Court instructs the jury that the defendant, Anthony Jones, is never required to prove his innocence, and in order for him to be acquitted it is not necessary the jury be satisfied in their mind he is in fact innocent, but whenever there arises out of the evidence a reasonable probability that he is innocent, then he is entitled to an acquittal for reasonable probability of innocence is always reasonable doubt of guilt. In other words, although the theory that hi (sic) is guilty is more reasonable that the theory that hi (sic) is innocent, yet if there arises out of the evidence, and there is supported by the evidence, any reasonable theory under which the defendant may probably be innocent, he is entitled to be acquitted.

(R.1 at 43.)

"circumstantial evidence" case, a two-theory instruction regarding a fact or circumstance susceptible of two interpretations was unwarranted).[35] (R.4 at 372-73.)

The Mississippi Supreme Court has held that circumstantial evidence may be used to prove intent without a circumstantial evidence instruction. *See Hunt*, 687 So. 2d at 1162. Nevertheless, the record reflects that the evidence presented on the charge of aggravated assault was not wholly circumstantial. Indeed, Eddie Butler testified that he was driving down Washington Street on September 7, 2003, and observed a woman (later identified as Ms. Thomas) jump out of a red van backing out of a driveway. He testified that the van chased the woman down the street, and "swung back like a perfect hit, to catch the young lady with the hood of his truck or van." He testified that the van went into a church parking lot and knocked down some bricks, and knocked the woman to the ground. (R.3 at 246-55).

Based on the foregoing, this court cannot conclude that the trial court erred when it refused Jury Instruction D-6. Further, this court cannot conclude that the trial court's denial of the circumstantial jury instruction rose to a level of constitutional violation. Accordingly, the court finds that the Mississippi Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law to the facts in the instant case, and habeas relief on this claim is hereby denied.

**GROUND THREE**

In Ground Three, Jones alleges a violation of his equal protection rights under the Fourteenth Amendment for the trial court's admission of inflammatory evidence that prejudiced him. Specifically, Jones claims the court erred in allowing the state to mention his prejudicial

---

[35]"A circumstantial evidence case (for the purposes of granting a 'two-theory' instruction) is one in which there is neither an eyewitness nor a confession to the crime." *Rogers*, 847 So. 2d at 863.

prior bad acts, including an alleged assault on the victim on September 6, 2003 (the day prior to the charged crimes), and in admitting testimony from the state's witnesses regarding same.

Jones raised this issue on direct appeal, and the Mississippi Supreme Court rejected it on its merits.[36]  The court held,

> The evidence stemming from Jones's September 6 assault on Thomas is clearly admissible under the exceptions to Rule 404(b).[37]  Not only are Jones's actions relevant to his motive for tracking Thomas down and assaulting her again the following day, they also directly pertain to the continuing act of violence to the extent that Jones ultimately accomplished a series of interrelated criminal acts which began the day before on September 6. To hold this evidence inadmissible as evidence of a prior bad act would be to hamstring the State in the presentation of the complete story of Jones's crime.  The evidence of the incident of September 6 was not offered to show Jones's character or that he was acting in conformity with a particular character trait.  Instead this evidence was offered as part of the very actions for which he was indicted.  Thus, we find this issue to be without merit as it relates to admissibility under Miss. R. Evid. 404(b).  However, further discussion is necessary on the ultimate issue of admissibility of this evidence pursuant to Miss. R. Evid. 403.   This discussion continues below.

*Jones v. State*, 920 So. 2d 465, 474-75 (Miss. 2006).  The court also analyzed Jones's claim that he was unfairly prejudiced when the trial court failed to perform an on-the-record Rule 403 balancing test prior to admitting the evidence stemming from his September 6, 2003 assault on the victim.  *Jones*, 920 So. 2d at 475.  The court found this issue to be without merit, reasoning "while we clearly interpret the rules of evidence as requiring that all otherwise admissible

---

[36]*Jones v. State*, 920 So. 2d 465, 474-76 (Miss. 2006).

[37]Mississippi Rule of Evidence 404(b) provides:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

evidence be 'filtered' through the balancing test set forth in Rule 403,[38] we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal." *Id.* at 476. "Moreover, the evidence of the September 6 incident was properly admitted as its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.*

Jones also raised this issue in his application for post-conviction relief, and the Mississippi Supreme Court dismissed the claim as procedurally barred pursuant to Miss. Code. Ann. § 99-39-21.[39]

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999), *rehg & reh'g en banc denied*, 184 F.3d 820 (1999) (citation omitted); *see also Edwards v. Butler*, 882 F.2d 160 (5th Cir. 1989). A trial is rendered fundamentally unfair by the admission of trial testimony when the trial is "'largely robbed of dignity due a rational process.'" *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984)). Moreover, "the mere erroneous admission of prejudicial testimony does not, in itself, justify federal habeas relief unless it is material in the sense of a crucial, critical, highly significant factor, in the context of the entire trial." *Johnson*, 778 F.2d at 1050 (internal citations and quotations omitted).

The record reflects that the state filed a motion in limine on this issue prior to trial. Specifically, the state sought a preliminary ruling on the admissibility of testimony by Keisha

---

[38]Mississippi Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[39]*See* State Court Record, No. 2006-M-00761, Miscellaneous Pleadings.

Smith regarding the assault by Jones on the victim on September 6, 2003. (R.1 at 18-19.) After a hearing on the matter, the trial judge granted the state's motion in limine and ruled that the evidence was admissible to show motive, citing to *Rogers v. State*, 777 So. 2d 673 (Miss. Ct. App. 2000), *Johns v. State*, 746 So. 2d 947 (Miss. Ct. App. 1999), and *Webster v. State*, 817 So.2d 515 (Miss. 2002). (R.1 at 24; Supp. R.1 of 1 filed 3/15/05.)

Based on the record, the court agrees that the evidence of Jones's attempted assault on the victim the day before the crimes occurred was properly admissible under Mississippi law. Even if the testimony regarding Jones's prior bad acts were erroneously admitted, given the overwhelming evidence against Jones as discussed above, this court cannot conclude that the admission of Jones's prior bad acts rendered his trial "fundamentally unfair" or that his trial was "'largely robbed of dignity due a rational process.'" *Johnson*, 778 F.2d at 1050 (quoting *Menzies*, 743 F.2d at 288). Further, this court does not find that such evidence was "material in the sense of a crucial, critical, highly significant factor, in the context of the entire trial." *Id.* Accordingly, the court finds that the Mississippi Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law, and habeas relief on this claim must be denied.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that the relief sought in Jones's Petition for Writ of Habeas Corpus be denied and that the petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The

District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 16th day of June, 2009.

s/ Michael T. Parker
United States Magistrate Judge